SHERRY HOGAN, by Jerry Hogan, her Father and Next Friend, Plaintiff-Appellant, *v.* BETTY HOGAN, Defendant-Appellee.

Fifth District    No. 81-330

Opinion filed April 16, 1982.

· Kathryn P. Taylor, of Law Offices of William W. Schooley, of Granite City, for appellant.

Burton C. Bernard and Don A. Shaffer, both of Bernard, Davidson and Kaseberg, of Granite City, for appellee.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, Sherry Hogan, an unemancipated minor child, was injured on her way home from a piano lesson while riding as a passenger in an automobile operated by defendant, her natural mother, Betty Hogan. By her natural father and next best friend, Jerry Hogan, plaintiff brought suit against defendant, alleging negligence and seeking damages "in the sum of Ten Thousand Dollars ($10,000.00) and only to the limits of the policy of liability insurance with Madison County Mutual Insurance Company and costs of suit." In its order dismissing plaintiff's amended complaint the trial court stated,

> "From an examination of the Amended Complaint it is clear that the accident occurred when Defendant was driving herself home from work and in the process giving plaintiff a ride home from piano lessons. The Court feels that in so doing, Defendant was operating the motor vehicle to accomplish a family purpose and is therefore immune from suit by Plaintiff."

Plaintiff appeals raising two issues: (1) "[w]hether the 'family purpose' exception to the parental immunity doctrine in Illinois applies in automobile cases based on negligence" and (2) "[w]hether the 'family purpose' exception to the parental immunity doctrine in Illinois was met in this case."

In *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12, a father brought suit against his 17-year-old unemancipated daughter for injuries he suffered as a pedestrian on the streets of Bloomington in consequence of her negligent operation of an automobile. Reciting the public policy that undergirds the doctrine of parental immunity, that is, the preservation of "the peace, harmony, tranquility, discipline, cooperation, love and respect essential to good family relationship" (100 Ill. App. 2d 199, 203, 241 N.E.2d 12, 13), the court declared the determinative issue in *Schenk* "narrowed to the question as to whether or not in a parent-child relationship the immunity rule should bar recovery for [negligent] conduct wholly unrelated to the objectives or purposes of the family itself" (100 Ill. App. 2d 199, 204, 241 N.E.2d 12, 14). Concluding that it should not, the court stated that "[t]he facts here charged occurred during the exercise by both the father and the child of his individual rights on the public streets and with no direct connection with the family relationship" (100 Ill. App. 2d 199, 206, 241 N.E.2d 12, 15), and determined that the complaint stated a good cause of action for tortious conduct having no direct family relationship. Refusing to repudiate the doctrine of parental immunity in all situations, the court said:

> "We therefore conclude that there are no impelling reasons for eroding or emasculating the family immunity rule for conduct of either parent or child arising out of the family relationship and

directly connected with the family purposes and objectives in those cases where it may be said that the carelessness, inadvertence or negligence is but the product of the hazards incident to interfamily living and common to every family. In such instances the immunity doctrine is neither unjust, unreasonable nor without a sound and solid foundation. To hold otherwise is to inject into the courts a judicial supervision over everyday family conduct of parent and child, and invite endless litigation over what is or is not ordinary negligence in the operation of a household. The assumption of the rule of paterfamilias by either the courts or State, except under the most compelling circumstances, is foreign to our way of life." 100 Ill. App. 2d 199, 206, 241 N.E.2d 12, 15.

In the subsequent case of *Cummings v. Jackson* (1978), 57 Ill. App. 3d 68, 372 N.E.2d 1127, the guardian of a minor child brought suit on her behalf against her mother for negligence in failing to trim trees between the defendant's nearest property line and the edge of the street. The trees allegedly obstructed the view of the driver of an automobile that hit the child. The court found the mother's duty to trim the trees one owed primarily to the general public and only incidentally to the members of the family living in the house together. Relying upon *Schenk*, the court "conclude[d] that the injury to [the child] was not alleged to arise out of the family relationship" (57 Ill. App. 3d 68, 70, 372 N.E.2d 1127, 1128), and ruled the dismissal of the pertinent count of the complaint to have been error.

In the more recent case of *Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 403 N.E.2d 1256, the guardian of a minor child brought suit on the child's behalf alleging personal injury caused by the negligence of the child's father, the defendant, in the operation of a motor vehicle. The court concluded that "a complaint should be judged sufficient or insufficient at law based on what it does allege and not on what it does not allege as was the case in *Schenk* and *Cummings*" (83 Ill. App. 3d 234, 237, 403 N.E.2d 1256, 1259), and that the plaintiff has a duty to include in the complaint an affirmative allegation, supported by specific facts, that the injury arose as a result of negligence in connection with an activity outside the family relationship.

In another recent case, *Eisele v. Tenuta* (1980), 83 Ill. App. 3d 799, 404 N.E.2d 349, the plaintiff had been injured while a passenger in a motor vehicle driven by the defendant, her unemancipated 16-year-old son, while in Wisconsin on a trip undertaken for the purpose of allowing the defendant to decide whether he wished to attend the University of Wisconsin. Citing *Schenk*, the court stated, "The family immunity doctrine bars actions for negligence between parent and child only when the

conduct arises out of the family relationship and is directly connected with the family purposes and objectives." (83 Ill. App. 3d 799, 801, 404 N.E.2d 349, 351.) The court concluded the trial court had correctly determined, as a matter of law, that the trip involved a family purpose:

> "Even though the mother would allegedly play no part in the decision-making process, we believe a family outing of this nature arises out of the family relationship and is directly connected with family purposes and objectives." (83 Ill. App. 3d 799, 802, 404 N.E.2d 349, 352.)

Plaintiff asks us to distinguish *Eisele* from the case at bar, which we are unable to do. We agree with the trial court that defendant was operating the motor vehicle to accomplish a family purpose and that she is, therefore, immune from suit by plaintiff.

Plaintiff cites numerous cases from foreign jurisdictions permitting actions by a child against a parent for negligence. Many such cases have considered the existence of liability insurance a reason for permitting such actions, particularly where the negligent conduct arose out of the operation of a motor vehicle. However, in *Schenk* the court said, "Neither do we think that the existence or nonexistence of protective insurance is a sound basis for the determination of liability. It is at best an illogical expression of disenchantment with the immunity rule and a baseless escape valve for a refusal to impose that rule." (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 205, 241 N.E.2d 12, 14.) Although the law of certain jurisdictions does permit such suits (see Annot., 41 A.L.R.3d 904 (1972)), the law of Illinois does not, a situation the Supreme Court of Illinois may, of course, see fit to alter.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.