ROBERT B. LARSON, JR., *et al.*, Minors, by Marie Larson, their Mother and Next Friend, Plaintiffs, *v.* HELEN A. BUSCHKAMP *et al.*, Defendants.— (HELEN A. BUSCHKAMP *et al.*, Counterplaintiffs-Appellants, *v.* ROBERT B. LARSON, Counterdefendant-Appellee.)

Second District   No. 81-610

Opinion filed April 26, 1982.

Stanley J. Davidson and Michael F. Hendrick, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellants.

Leo J. Sullivan, III, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

This appeal arises from an order of the trial court dismissing a counterclaim for contribution brought by defendants Helen A. Buschkamp and Keystone Printing Service, Inc. (Keystone), against Robert B. Larson, father of the minor plaintiffs herein. Suit was brought on behalf of the minor plaintiffs by their mother against defendants Buschkamp, Keystone and Larson. Buschkamp and Keystone filed a counterclaim for contribution against Larson. Larson filed motions to dismiss both the original complaint against him and the counterclaim on the basis of the parent-child tort immunity doctrine. The trial court initially granted the motion to dismiss the complaint brought against Larson by his minor children, and after reviewing briefs and considering arguments of counsel, the trial court also dismissed the counterclaim for contribution. This interlocutory appeal pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) only seeks review of the dismissal of the counterclaim for contribution against Larson.

The allegations in the pleadings and the court proceedings below are briefly summarized. On August 15, 1978, Robert Larson was driving his car in a northerly direction along Milwaukee Avenue, near the intersection with Grand Avenue in Lake Villa, Lake County, Illinois. In the car, as his passengers, were his children, Robert Jr., Ronald and Russell Larson, all unemancipated minors. The Larson car collided with a car owned by Keystone and operated by its employee, Helen Buschkamp, which was traveling in a southerly direction. As a result of the collision the three Larson children were injured.

On August 15, 1980, Marie Larson, as mother and next friend of the Larson children, filed a complaint alleging a cause of action for negligence against Helen Buschkamp, Keystone and Robert Larson. The complaint alleged that both defendant drivers were guilty of the negligent operation of their respective motor vehicles.

On November 13, 1980, Buschkamp and Keystone filed a counterclaim seeking contribution from Robert Larson, plaintiffs' father. The counterclaim alleged that Larson was guilty of negligence in the operation of his motor vehicle by driving at an excessive rate of speed, failing to

keep a proper lookout, failing to control his vehicle, failing to apply his brakes, failing to yield the right-of-way, failing to decrease the speed of his vehicle to avoid a collision, and otherwise being negligent and careless in his conduct. It further alleged that if judgment is entered against them and in favor of the plaintiffs, that pursuant to section 2(a) of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)), allowing for contribution among joint tortfeasors, they were entitled to contribution from Larson commensurate with his degree of fault found to have contributed to the occurrence.

Larson moved to dismiss the original complaint against him based on parent-child tort immunity. Larson also moved to dismiss the third-party complaint against him based on this same immunity. Larson alleged that since he is not "subject to liability in tort" (see Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) for a direct suit by his children, he is not "subject to liability in tort" for purposes of contribution under the statute (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)).

On January 21, 1981, the trial court granted the motion to dismiss Larson as a defendant in the original suit. On July 8, 1981, after reviewing briefs and hearing the arguments of counsel, the trial court granted the motion to dismiss the counterclaim for contribution. The trial court in a memorandum reasoned that since Larson was immune from suit by his children, he was not "subject to liability in tort" for purposes of the contribution among joint tortfeasors statute. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) On August 3, 1981, the July 8, 1981, order was made final and appealable, pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)).
■■■ The sole issue to be determined on appeal is whether contribution may be sought under the pleadings here from a parent of an injured minor plaintiff where said parent's alleged negligence contributed to the injuries. This question is similar to the issue determined recently by this court in *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, *appeal denied*. In *Wirth*, this court held that even though Illinois provided for a statutory interspousal tort immunity (Ill. Rev. Stat. 1979, ch. 40, par. 1001), contribution may be had by a third-party tortfeasor against a negligent spouse. This court found that pursuant to the holdings in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, equity required that contribution be allowed against a joint tortfeasor spouse. (102 Ill. App. 3d 1074, 1082, 430 N.E.2d 236, 242.) Many of the same equitable considerations come into play in the case at bar as in *Wirth*. Furthermore, we note that *Wirth* dealt with a statutorily created tort immunity, whereas the parent-child tort immunity doctrine was created by the courts (*Foley v. Foley* (1895), 61 Ill. App. 577), and the court is free to modify and amend any doctrine which it creates. See

*Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 238, 403 N.E.2d 1256.

The parent-child tort immunity first appeared in American case law in the Mississippi case of *Hewlett v. George* (1891), 68 Miss. 703, 9 So. 885. The court there held, without citation of any authority, that a parent is immune from tort actions brought by his unemancipated minor children. The court determined that to hold otherwise would be against public policy favoring peace and harmony within the family unit. (68 Miss. 703, 711, 9 So. 885, 887.) The parent-child tort immunity doctrine was eventually adopted in a majority of the States. (Ingram and Barder, *The Decline of The Doctrine of Parent-Child Tort Immunity*, 68 Ill. B.J. 596 (1980).) The main reasons given for adopting the parent-child tort immunity are the following: (1) preservation of parental authority and family harmony; (2) prevention of depletion of family funds; and (3) the danger of fraud and collusion. In the last 50 years, however, some courts have narrowed or abrogated the doctrine indicating an apparent trend in the direction of permitting tort actions by minor children against their parents. See Annot., 41 A.L.R.3d 904 (1972), for a comprehensive analysis of the cases dealing with the question of parental liability for injury to an unemancipated child caused by a parent's negligence, the origins of the doctrine, and its more recent development and modification.

In Illinois the parent-child tort immunity doctrine was first acknowledged by a court in *Foley v. Foley* (1895), 61 Ill. App. 577. The continued existence of this court created doctrine was recently recognized by the Illinois Supreme Court in *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538, and *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323. However, the Illinois courts have interpreted and modified the doctrine several times. In *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525, our supreme court held that the parent-child tort immunity doctrine was justified for suits based upon mere negligence, but should not be a bar to a suit for wilful and wanton misconduct. (7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.) The parent-child tort immunity doctrine was also modified in *Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778, where this court stated that when the family relationship has been dissolved by death, there is no reason to apply the parent-child immunity. (2 Ill. App. 3d 844, 846, 277 N.E.2d 778, 779.) The doctrine was also modified in *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12, where the court stated that where the facts "charged occurred during the exercise by both the father and the child of his individual rights on the public streets and with no direct connection with the family relationship * * * reason and justice require that the immunity rule should not stand as an insuperable bar to redress for injuries occasioned by the exercise of those rights." (100 Ill. App. 2d 199, 206, 241 N.E.2d 12, 15.) Also found to

be outside the family relationship is the duty to keep trees and shrubs trimmed so a driver has a clear view of the street and sidewalk. (*Cummings v. Jackson* (1978), 57 Ill. App. 3d 68, 372 N.E.2d 1127.) Found to be within the family relationship, thus barring suit, is the parent's maintenance of carpeting on a stairway (*Cosmopolitan National Bank v. Heap* (1970), 128 Ill. App. 2d 165, 262 N.E.2d 826) and a family trip to determine what college one of the children wants to attend. (*Eisele v. Tenuta* (1980), 83 Ill. App. 3d 799, 802, 404 N.E.2d 349.) Most recently, this court held that when a child is suing a parent for mere negligence, the complaint must specify that the injury occurred in a situation outside the scope of the family relationship. (*Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 403 N.E.2d 1256.) Thus, while we conclude that in Illinois the courts continue generally to give vitality to the parent-child tort immunity doctrine as a consequence of public policy considerations favoring the promotion of family harmony and the prevention of intrafamily litigation and strife (see *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 49, 373 N.E.2d 1323), the rule has been modified where the purpose of the doctrine will not be served.

Although the parent-child tort immunity doctrine appears to have been narrowed in Illinois, we have found no Illinois case which has considered the question of its application to a suit for contribution against a parent by an alleged tortfeasor. As we observed in *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, *appeal denied*, interspousal tort immunity is a procedural, not a substantive, bar to actions between spouses. (See *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390-91, 396 N.E.2d 528.) Further, we held that the words "subject to liability in tort" contained in the contribution statute (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) were not intended by the legislature to bar an action for contribution by a joint tortfeasor against plaintiff's spouse. For the same reasons we hold here that the doctrine of parent-child tort immunity is not a substantive bar to actions between parent and child, nor does the contribution statute itself prevent such an action for contribution.

What we must now determine is whether there are any prevailing "public policy" considerations pertinent to the relationship of parent and child which should prevent application of the desirable policy exhibited by our contribution statute for the equitable distribution of loss among those parties responsible. The defendant father, Larson, contends that parent-child tort immunity should be viewed differently than interspousal tort immunity. He argues that the natural bonds between parent and child should not be disturbed by a contribution action involving the parent. Larson urges that such an action may endanger the mutual trust and respect demanded by the parent-child relationship. He states that "[w]hile divorce may dissolve the relationship between spouses, it does

not dissolve the relationship of parent and child." This court does not believe that an action for contribution will endanger the parent-child relationship. As we noted above, the courts in Illinois in several cases have already restricted the application of the doctrine and sanctioned direct parent-child tort suits in certain circumstances. (See *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525; *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12.) Other jurisdictions which have abolished the parent-child tort immunity doctrine have met the family disruption argument by reasoning that the injury itself, and not the consequent suit, is the factor which may upset the family unit. (*Williams v. Williams* (Del. 1976), 369 A.2d 669; *Falco v. Pados* (1971), 444 Pa. 372, 282 A.2d 351.) The widespread use of liability insurance mitigates against the possibility that such suits disrupt the domestic peace or deplete the family's financial resources. (*Williams v. Williams* (Del. 1976), 369 A.2d 669; *France v. A.P.A. Transport Corp.* (1970), 56 N.J. 500, 267 A.2d 490.) These practical realities mitigate against our giving great weight to the argument of disruption of the bond between parent and child which may result from contribution action against a parent by another tortfeasor.

Larson also contends that allowing an action for contribution against a parent will have the practical effect of encouraging intrafamily litigation. The result, he contends, will be that a parent may have to give evidence of the child's negligence and raise issues which may mitigate and discredit the child's damages or claimed injuries. As stated above, we doubt whether this would disrupt the family. Moreover, the goal of equitable apportioning of damages among all culpable parties outweighs the speculative harm which Larson posits. See *Perchell v. District of Columbia* (D.C. Cir. 1971), 444 F.2d 997.

Examination of cases from other jurisdictions indicates generally that in those States which have disallowed an action for contribution from a spouse, parent or someone else immune from direct suit, the basis for this bar is the principle that the right to contribution is dependent upon the injured party having a cause of action against the person from whom contribution is sought. Thus, the right of contribution is a derivative right, and the original immunity is a substantive bar. (See *Welter v. Curry* (1976), 260 Ark. 287, 539 S.W.2d 264; *Ennis v. Donovan* (1960), 222 Md. 536, 161 A.2d 698.) However, in other cases which have specifically considered the issue of contribution from a parent, the parent-child tort immunity doctrine applicable in direct suits was found to be only a procedural bar to an action and did not prevent contribution from a parent. *Quest v. Joseph* (Fla. App. 1980), 392 So. 2d 256, *appeal pending*, Fla. Sup. Ct., Docket No. 60-237; *Walker v. Milton* (1972), 263 La. 555, 268 So. 2d 654.

We perceive no overriding public policy considerations present in a

contribution action against a parent which compel us to reach a different result from that held in *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, *appeal denied*, which allowed a contribution action against a spouse. This conclusion also follows logically from the decisions in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, which sought to apportion damages for tort injuries as equally as possible among those who were responsible.

While we do note that defendant Larson appears to argue additionally that there is a difference between the parent-child tort immunity and interspousal tort immunity based upon the parental duty "to warn, supervise, educate and care for children," the pleadings in the counterclaim do not allege negligent supervision of the child by Larson. In other jurisdictions, where an allegation of negligent supervision by a parent either in a direct suit by a minor against a parent or in an action for contribution against a parent, the rule of parental immunity has been preserved. (See *Schneider v. Coe* (Del. (1979), 405 A.2d 682; *France v. A.P.A. Transport Corp.* (1970), 56 N.J. 500, 267 A.2d 490; *contra, Quest v. Joseph* (Fla. App. 1980), 392 So. 2d 262, *appeal pending*, Fla. Sup. Ct., Docket No. 60-237.) However as this issue is not before us, we need only find that, under the pleadings as presented here, contribution may be sought from a parent of an injured minor plaintiff where the parent's alleged negligence contributed to the minor's injuries.

The order of the circuit court of Lake County granting defendant Larson's motion to dismiss the counterclaim for contribution is hereby reversed and remanded.

Reversed and remanded.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.