(Nos. 80303, 80304 cons.

ALFRED RAMSEY v. DAVID J. MORRISON, Appellee (Ricky Baker *et al.*, Appellants).

*Opinion filed February 6, 1997.*

HARRISON, J., concurring in part and dissenting in part.

Mervin W. Warren and Richard A. Tjepkema, of Bernard & Davidson, of Granite City, for appellant Ricky Baker.

Thomas R. Peters and Curtis R. Picou, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant Tony Baker, d/b/a Baker's Auto Repair.

Harry C. Armstrong and Charles C. Compton, of Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, P.C., of Edwardsville, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The primary issues in this appeal concern the application of this court's decision in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). We are asked to determine: (1) whether a third party sued by an injured employee may recover contribution from a coemployee who is immune from a direct suit by the employee under section 5(a) of the Workers' Compensation Act (820 ILCS 305/5(a) (West 1992)), and (2) how an employer's contribution liability under *Kotecki* is calculated with relation to the attorney fees and costs provision of section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)).

## FACTS

On April 10, 1991, third-party defendant Ricky Baker was driving a truck northbound on a two-lane roadway when he collided with a southbound vehicle driven by the defendant, David Morrison. The plaintiff, Alfred Ramsey, was a passenger in Ricky Baker's truck and he sustained a broken jaw as a result of the collision. Both the plaintiff and Ricky Baker were employees of third-party defendant Tony Baker, d/b/a Baker's Auto Repair, who is also Ricky's father. The parties stipulated that both the plaintiff and Ricky Baker were acting within the scope of their employment at the time of the accident.

The plaintiff received compensation for his injury

under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)) from his employer, Tony Baker, d/b/a Baker's Auto Repair. On September 20, 1991, the plaintiff filed suit against David Morrison in the circuit court of Madison County, charging that Morrison's negligence caused the collision. Morrison thereafter filed a third-party complaint for contribution against Ricky Baker, alleging that Ricky Baker's negligence caused the collision. This third-party complaint incorrectly alleged that Ricky Baker was the employer of the plaintiff. Subsequently, however, Morrison filed an amended third-party complaint adding a claim for contribution against Tony Baker, as the plaintiff's employer. The amended third-party complaint retained the claim for contribution against Ricky Baker, the plaintiff's coemployee. The complaint charged that Ricky Baker's negligence caused the collision, and that Tony Baker, as Ricky Baker's employer, was vicariously liable for Ricky Baker's negligence.

Tony Baker moved to dismiss the amended third-party complaint on the ground that it was untimely filed. The trial court denied the motion. The record also contains an order denying Ricky Baker's motion to dismiss the third-party complaint, although the record does not contain a motion to dismiss filed by Ricky Baker.

The case proceeded to trial before a jury between April 4 and 8, 1994. At trial, differing accounts of the accident were presented by the plaintiff, Ricky Baker, and Morrison. However, a Madison County deputy sheriff who investigated the accident testified that both Morrison's and Ricky Baker's vehicles had gone over the center line of the road before the collision.

On April 8, 1994, the jury returned a verdict in favor of the plaintiff and against the defendant, Morrison, assessing the plaintiff's damages at $70,708.49. The jury

also found in favor of Morrison and against Ricky and Tony Baker on Morrison's third-party complaint. The jury apportioned liability as follows: 50% to Morrison and 50% to Ricky and Tony Baker. The trial judge issued an order adjudicating the employer's liability under the Workers' Compensation Act at $27,457.36.

All parties except the plaintiff filed post-trial motions. The defendant, Morrison, also filed a separate motion for judgment on his contribution verdicts against Ricky and Tony Baker. Ricky Baker's post-trial motion argued, *inter alia*, that he could not be liable for contribution to Morrison because he was immune as the plaintiff's coemployee. The trial judge agreed and entered judgment in favor of Ricky Baker. Tony Baker's post-trial motion argued, *inter alia*, that his motion to dismiss Morrison's third-party action on the ground of timeliness should have been granted. The trial court granted Tony Baker's motion on this basis and entered judgment in his favor. Based upon these rulings, Morrison's motion for judgment on his contribution verdicts was denied. The trial court did, however, rule conditionally on the issue of the limit of employer Tony Baker's contribution liability, pursuant to section 2—1202(f) of the Code of Civil Procedure (735 ILCS 5/2—1202(f) (West 1992)). The trial court resolved this issue by holding that the workers' compensation benefits paid to the plaintiff by the employer constituted the full extent of the employer's liability, and the employer should pay nothing further to the plaintiff or to Morrison. The court also determined, however, that the plaintiff was entitled to collect 25% of that amount for his attorney fees pursuant to section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)). The trial court therefore held that the amount of the setoff Morrison was entitled to receive as a result of his contribution judgment against the employer would be reduced by 25% for the

section 5(b) fees, to equal 75% of the workers' compensation benefits paid.

Morrison appealed, and the appellate court reversed. 276 Ill. App. 3d 111. The appellate court held first that the trial court abused its discretion in granting the employer's post-trial motion to dismiss Morrison's third-party action, finding no prejudice to the employer resulting from the timing of the third-party complaint. The appellate court also held that the trial court abused its discretion in granting coemployee Ricky Baker's post-trial motion to dismiss. The appellate court concluded that a coemployee's immunity under the Workers' Compensation Act does not bar an action for contribution against him. Last, the appellate court reversed the trial court's determination that Morrison's contribution judgment against the employer should be reduced by 25% for the attorney fees obligation under section 5(b). The court held that an employer's contribution liability is limited only to the amount of workers' compensation benefits paid, with no reduction for section 5(b) fees. The appellate court remanded the cause for reinstatement of the judgment in favor of Morrison and against Ricky and Tony Baker.

We granted the petitions for leave to appeal filed by the employer, Tony Baker, and by the coemployee, Ricky Baker, and consolidated the two cases for our review. 155 Ill. 2d R. 315. We now affirm in part and reverse in part the appellate court's judgment.

## ANALYSIS

### I

We first consider whether the trial court correctly dismissed Morrison's contribution action against Ricky Baker, the plaintiff's coemployee, on the ground that the coemployee was immune from liability. We hold that the trial court correctly dismissed Morrison's contribution action against the plaintiff's coemployee.

As noted, at the time of the accident, Ricky Baker and the plaintiff were employees of Baker's Auto Repair and were acting in the course of their employment. Under these circumstances, Ricky Baker, as a coemployee, is immune from a common law negligence suit by the plaintiff pursuant to section 5(a) of the Workers' Compensation Act. Section 5(a) provides, in pertinent part:

> "No common law or statutory right to recover damages from the employer *** or the agents or employees of *** [the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a) (West 1992).

This section operates to make workers' compensation benefits the exclusive remedy of an injured employee against a negligent coemployee acting in the course of his or her employment. *Fregeau v. Gillespie*, 96 Ill. 2d 479, 484 (1983); *Rylander v. Chicago Short Line Ry. Co.*, 17 Ill. 2d 618, 628 (1959) (Workers' Compensation Act bars action by injured employee against coemployee based on coemployee's negligence in the course of his or her employment). The plaintiff has not attempted to directly sue the coemployee for his injuries. Rather, the plaintiff sued a third party, Morrison, who in turn sought contribution toward that liability from the coemployee. The issue here presented, then, is whether a third party sued by an injured employee may recover contribution from a coemployee who is immune from a direct suit by the plaintiff.

The right to contribution is premised on the notion that a party should not be forced to pay more than its proportionate share of a liability shared with another culpable party. The right to contribution, however, will occasionally clash with an immunity from direct suit possessed by the party from whom contribution is

sought. This court in *Doyle v. Rhodes*, 101 Ill. 2d 1 (1984), held that a party's immunity from direct suit by the plaintiff may not necessarily immunize that party from a contribution claim by a defendant sued by the plaintiff. In *Doyle*, it was held that the immunity from suit by an injured employee granted to an employer under the Workers' Compensation Act did not preclude a contribution action against the employer by a third party sued by the employee. *Doyle*, 101 Ill. 2d at 14.

The right of contribution will not always prevail over the competing immunity. Rather, our courts balance the policy considerations supporting contribution against those supporting immunity to determine which doctrine should prevail in a particular case. See, *e.g.*, *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 943-44 (1992) (balancing the policies underlying the statutory immunity granted to public rescue services versus those supporting contribution and holding that the immunity should prevail); *Stephens v. Cozadd*, 159 Ill. App. 3d 452, 458-59 (1987) (holding that the public policy considerations supporting public officials' immunity required that the immunity be applied to bar contribution actions as well as direct actions); *Hartigan v. Beery*, 128 Ill. App. 3d 195, 198-99 (1984) (holding that the policies underlying parent-child immunity were outweighed by the policies supporting contribution); *Moon v. Thompson*, 127 Ill. App. 3d 657, 659 (1984); *Larson v. Buschkamp*, 105 Ill. App. 3d 965, 969-71 (1982).

We performed such a balancing inquiry in the workers' compensation setting in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). In *Kotecki,* this court considered the amount of contribution which a third party sued by an injured employee could obtain from the plaintiff's employer. *Kotecki*, 146 Ill. 2d at 164-65. In addressing this issue, *Kotecki* acknowledged that there

was an "underlying controversy between workers' compensation and contribution." *Kotecki*, 146 Ill. 2d at 162. This court identified the competing interests of the employer versus the third party as follows:

> " 'If contribution or indemnity is allowed [from the employer], the employer may be forced to pay his employee—through the conduit of the third-party tortfeasor—an amount in excess of his statutory workers' compensation liability. This arguably thwarts the central concept behind workers' compensation, i.e., that the employer and employee receive the benefits of a guaranteed, fixed-schedule, nonfault recovery system, which then constitutes the exclusive liability of the employer to his employee. [Citation.] If contribution or indemnity is not allowed, a third-party stranger to the workers' compensation system is made to bear the burden of a full common-law judgment despite possibly greater fault on the part of the employer. This obvious inequity is further exacerbated by the right of the employer to recover directly or indirectly from the third party the amount he has paid in compensation regardless of the employer's own negligence. [Citations.] Thus, the third party is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule.' " *Kotecki*, 146 Ill. 2d at 162-63, quoting *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 119-20, 257 N.W.2d 679, 684 (1977).

We struck a balance between these competing interests in *Kotecki* by allowing the third party to obtain contribution from the employer, but only up to the amount of the employer's workers' compensation liability. That balance substantially preserved the employer's immunity under the workers' compensation scheme by limiting the employer's liability for contribution. The third party's right to contribution, on the other hand, was only partially preserved. As we explained:

> " '[This approach] allows the third party to obtain limited contribution, but substantially preserves the employer's interest in not paying more than workers' compensation

liability. While this approach may not allow full contribution recovery to the third party in all cases, it is the solution we consider most consistent with fairness and the various statutory schemes before us.' " *Kotecki,* 146 Ill. 2d at 165, quoting *Lambertson,* 312 Minn. at 130, 257 N.W.2d at 689.

Thus, to some extent, preserving the policies underlying the workers' compensation system took precedence over the third party's right to contribution in *Kotecki.*

We must conduct a similar balancing of policies to determine whether the third party's right to contribution should prevail over the immunity granted to coemployees by the Workers' Compensation Act. We hold that coemployee immunity is an important facet of the workers' compensation system which must prevail over the third party's right to contribution.

Coemployee immunity has been recognized as integral to a basic purpose of our workers' compensation system. This court has repeatedly noted:

"[T]he basic purpose of workmen's compensation [is] to place the cost of industrial accidents upon the industry. That purpose would be blunted if the cost of those accidents was shifted from one employee to another within the industry. So far as persons within the industry are concerned, the Workmen's Compensation Act eliminated fault as a basis of liability." *Rylander v. Chicago Short Line Ry. Co.,* 17 Ill. 2d 618, 628 (1959).

See also *Meerbrey v. Marshall Field & Co.,* 139 Ill. 2d 455, 469 (1990); *Fregeau v. Gillespie,* 96 Ill. 2d 479, 484 (1983).

Similarly, this court has observed:

"[If coemployee immunity were not recognized] an employee who has inadvertently injured a fellow worker would be forced to bear the sole cost of defending and satisfying the common-law action without any part of the cost being passed on to the industry, since the common employer's liability is expressly limited to the compensation award. [Citation.] In view of the fact that a considerable portion of industrial injuries can be traced to the

negligence of a coworker, such litigation could reach staggering proportions, and would not only tend to encourage corrupt and fraudulent practices but would also disrupt the harmonious relations which exist between coworkers. The avoidance of such results is most certainly beneficial to the employee." *O'Brien v. Rautenbush*, 10 Ill. 2d 167, 174 (1956), *overruled on other grounds, Rylander*, 17 Ill. 2d at 628.

See also *Mitsuuchi v. City of Chicago*, 125 Ill. 2d 489, 495 (1988).

Accordingly, this court has recognized that the immunity granted to coemployees under our workers' compensation system is not merely gratuitous, but is tied to a basic purpose of workers' compensation.

The highest court of a sister state has written expansively on this principle. *Madison v. Pierce*, 156 Mont. 209, 478 P.2d 860 (1970). We find that court's comments on the policies underlying coemployee immunity to be instructive:

"The broad purpose of the Montana Workmen's Compensation Act is to substitute a system for the payment of medical costs and wage losses to injured employees without regard to fault, for the common law system of legal action by the injured employee against the one whose negligence proximately caused his injury. The principle behind this legislation was that the business enterprise or industry should directly bear the costs of injury to its employees in the same manner as the enterprise has always borne the costs of maintaining and repairing its plant, machinery and equipment.

\* \* \*

If [the Act] were construed to withhold immunity to a coemployee from a negligence action, the cost of injury to an employee of the business would be shifted from the employer, where the Act places it, to a fellow employee, where the Act does not place it. It also would defeat the ultimate payment of injury cost by the public purchasing the product. \*\*\* We cannot believe the legislature intended to permit the ultimate costs of employee injury

to be borne by fellow employees, whether negligent or not. It would be a sad spectacle, indeed, for a workman to find his home taken and his future earnings subjected to payment of a judgment in such a suit." *Madison,* 156 Mont. at 213-15, 478 P.2d at 863-64.

Clearly, a central purpose of the workers' compensation system is to place the cost of employee injuries on the enterprise or the industry, and that purpose is accomplished, in part, by granting immunity to coemployees whose negligence caused or contributed to the injury. Under this system, an employee injured on the job is compensated for his injuries by the employer's payment of workers' compensation benefits. Those benefits cover not only the liability of the employer, but also that of the employer's other employees who negligently caused the injury in the course of their employment. In other words, the liability of the coemployee is paid by the employer in the form of workers' compensation benefits and the coemployee is immune from suit. In this manner, the system achieves the goal of placing the burden of employee injuries on the employer.

Allowing contribution to be recovered from a coemployee would entirely defeat the effect of the immunity granted to coemployees and would thereby defeat a central purpose of the Workers' Compensation Act. Contribution from a coemployee would allow the cost of employee injuries to be placed on the coemployee. Moreover, the coemployee could be forced to subsidize the employer's payment of workers' compensation benefits. A third party sued by an injured employee could choose to sue only the coemployee, and not the employer, for contribution. Consequently, if a judgment was rendered for the injured employee, and the coemployee was found liable for contribution to that judgment, at least a part of the employer's reimbursement of its workers' compensation lien will have been paid *by the coemployee.* This result flies in the face of the intent of the workers'

compensation scheme. As the Minnesota Supreme Court observed in addressing coemployee immunity under that state's workers' compensation statute:

> "To allow an employee to sue his fellow worker for negligence and thus permit his employer to be reimbursed from the recovery for workers' compensation benefits already paid is 'to shift tort liability from employer to fellow employee in a manner never intended by the workers' compensation system.'" *Peterson v. Kludt*, 317 N.W.2d 43, 48 (Minn. 1982), quoting Minnesota Workers' Compensation Study Commission, *A Report to the Minnesota Legislature and Governor* 41 (1979).

Considering the important role coemployee immunity plays in our workers' compensation scheme, and the fact that contribution from the coemployee would defeat that immunity, we must conclude that the immunity prevails over the right to contribution. Accordingly, we hold that where coemployee immunity under the Workers' Compensation Act would bar a direct suit against the coemployee, it will also bar a third-party contribution action against the coemployee.

This holding is entirely consistent with *Kotecki*. In *Kotecki*, we allowed contribution to be obtained from the employer, but only up to the amount of the employer's liability under the Workers' Compensation Act. In this manner, the employer's interest in limiting its liability to workers' compensation benefits was substantially preserved. Contribution was allowed only to the extent that it did not impair this important facet of the workers' compensation system. We have found here that allowing contribution to be recovered from an otherwise immune coemployee would defeat a basic purpose of the workers' compensation system. Thus, in keeping with *Kotecki*, the right to contribution must fall.

Further, we note that a third party sued by an injured employee is not, as a result of this holding, entirely without recourse when the negligence of the plaintiff's coemployee caused or contributed to the

plaintiff's injury. Under *Kotecki*, the third party may still recover contribution, albeit in a limited amount, from the employer. In many cases, the basis for imposing contribution liability on the employer will be the negligence of a coemployee. By pursuing a contribution action against the employer, the third party is thereby able to recover some contribution premised on the coemployee's negligence. In essence, the contribution allowed to be recovered from the employer under *Kotecki* constitutes the maximum contribution a third party may obtain for the negligence of either the employer or a coemployee acting in the course of his or her employment. In keeping with the intent of the Workers' Compensation Act, however, that liability must be paid by the employer, not by the coemployee.

In sum, we hold that the immunity granted to coemployees under section 5(a) of the Workers' Compensation Act (820 ILCS 305/5(a) (West 1992)) may be raised as a bar in both direct actions and third-party contribution actions. In this case, there is no dispute that the coemployee, Ricky Baker, would be immune from a direct negligence suit by the plaintiff under section 5(a). Morrison's third-party claim for contribution against Ricky Baker is therefore also barred by section 5(a). The circuit court properly dismissed Morrison's third-party action against Ricky Baker on this basis.

## II

We next address whether the trial court abused its discretion in granting employer Tony Baker's post-trial motion. As noted, Morrison's pretrial motion for leave to file his third-party action against the employer was granted, and the employer's pretrial motion to dismiss that action was denied. A different judge presided at trial and post-trial proceedings than had presided over pretrial matters. That judge granted the employer's post-trial motion and dismissed the third-party action

against the employer. The trial judge determined that the employer was prejudiced because several depositions were taken before he was joined in the action. We agree with the appellate court that the post-trial order dismissing Morrison's third-party action against the employer was an abuse of discretion.

The employer does not contend that Morrison's third-party action was filed outside the applicable statute of limitations. The employer nonetheless challenges the timeliness of the third-party action. Morrison's third-party action sought contribution from the employer under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992)). Section 5 of the Contribution Act states that an action for contribution may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action. 740 ILCS 100/5 (West 1992). In *Laue v. Leifheit*, 105 Ill. 2d 191 (1984), this court interpreted section 5 to require that, where an underlying action has been filed, a third-party contribution action must be filed during the pendency of the underlying action or it is barred. Morrison's amended third-party complaint was filed during the pendency of the underlying action, and was thus timely under *Laue.* Even where a third-party contribution action is filed during the pendency of the underlying action, however, it may still be considered untimely where there was such a delay in filing that the third-party defendant would be prejudiced if the complaint were allowed to stand. See *Grimming v. Alton & Southern Ry. Co.*, 204 Ill. App. 3d 961, 977-78 (1990); *Long v. Friesland*, 178 Ill. App. 3d 42, 59-60 (1988). The record in this case shows that the employer was not prejudiced by the timing of Morrison's third-party action.

A review of the procedural history of this case is necessary for resolution of this issue. The plaintiff filed

his action against Morrison on September 20, 1991. Morrison answered the complaint on October 28, 1991. In answers to interrogatories filed on March 23, 1992, the plaintiff stated that he was employed at "Baker's Auto Repair." On May 15, 1992, Morrison sought leave to file a third-party complaint for contribution against Ricky Baker, charging that Ricky Baker's negligence caused the accident. This third-party complaint alleged that, at the time of the collision, the plaintiff was an employee of "Ricky W. Baker, d/b/a Baker's Auto Repair." Leave to file this third-party complaint was granted by the circuit court on June 1, 1992, and the complaint was filed on that date. Accordingly, as of this time, it was apparent that Morrison was acting under the impression that Ricky Baker was the plaintiff's employer.

In August 1992, however, the plaintiff filed answers to interrogatories propounded by Ricky Baker in which the plaintiff listed "Tony Baker d/b/a Baker's Auto Repair" as his employer at the time of the collision. On September 15, 1992, Morrison moved for leave to file an amended third-party complaint, adding Tony Baker, the employer, as a third-party defendant. The depositions of the plaintiff, Morrison and Ricky Baker, previously scheduled and continued on several occasions, were taken on September 23, 1992. The trial judge entered an order on September 26, 1992, granting Morrison's motion for leave to file the amended third-party complaint, and Morrison's amended third-party complaint was filed that same date. Count I again charged Ricky Baker, the plaintiff's coemployee, with negligently causing the collision, but added that Ricky Baker was acting as the employee/agent of Tony Baker at the time of the accident. Count II charged Tony Baker, d/b/a Baker's Auto Repair, with vicarious liability for the negligent acts of his employee/agent, Ricky Baker.

Morrison's amended third-party complaint was not

served on the employer, Tony Baker, until February 29, 1993. Prior to the time the employer was served, the depositions of the deputy sheriff who investigated the accident and a treating doctor were taken. Upon being served, the employer did not immediately move to dismiss the complaint but, rather, answered the complaint on March 26, 1993. It was not until two months after he was served that the employer filed a motion to dismiss challenging the timeliness of the amended third-party complaint.[1] The employer's motion charged that the amended third-party complaint was not timely filed, and that the delay had prejudiced him because he did not have adequate time to prepare for trial. Alternatively, the motion asked the court to continue the trial date so as to allow the employer "sufficient time to conduct discovery and prepare for trial." The trial court entered an order on May 7, 1993, denying the motion to dismiss, but continuing the trial date to September 20, 1993, and extending discovery to September 1, 1993. The trial eventually began on April 4, 1994, 13 months after the employer was served. The employer, represented by counsel, participated fully in the trial.

These facts demonstrate that the employer's motion to dismiss the amended third-party complaint was properly denied, and the post-trial order reversing that ruling was an abuse of discretion. The employer's motion to dismiss was clearly concerned with the impending trial date and the lack of time to conduct discovery and prepare for trial. The trial judge alleviated this concern by continuing both the trial date and the time for conducting discovery. Ultimately, the trial did not take place until 13 months after the employer was

---

[1]Notably, the employer did not, and does not now, contend that dismissal of the amended third-party complaint was warranted because of lack of diligence in serving him pursuant to Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)).

served. The employer thus had ample time to conduct discovery and prepare for trial. This is particularly true here, where the employer's alleged liability was premised solely on vicarious responsibility for another, Ricky Baker, a party to the action who also happens to be the employer's son.

The employer's argument that he was prejudiced because several depositions were taken before he was served must be rejected. The employer had 13 months within which he could have sought to take the depositions of those deponents, if he chose. The employer took no such action. Thus, the record reveals no prejudice to the employer sufficient to warrant dismissal of the third-party contribution claim.

The employer also asserts that, even if he was not prejudiced, dismissal was warranted because Morrison failed to offer a reasonable explanation for failing to file the third-party action against the employer earlier. We disagree. Section 2—406(b) of the Code of Civil Procedure provides that a defendant may file a third-party action "[w]ithin the time for filing his or her answer or thereafter by leave of court." 735 ILCS 5/2—406(b) (West 1992). This court has stated that third-party actions are favored and trial courts should be liberal in granting leave to file them. *People v. Brockman*, 143 Ill. 2d 351, 365 (1991). The third-party plaintiff's explanation for failing to file a third-party action earlier is simply one factor to be considered in assessing whether prejudice to the third-party defendant outweighs the right to file an otherwise timely action. Where there is clearly no prejudice to the third-party defendant, dismissal of the third-party action is not appropriate simply because the third-party plaintiff failed to provide an explanation for not filing earlier. In any event, the record in this case amply demonstrates that Morrison had a reasonable explanation for failing to file a third-party

action against the employer earlier. The record reveals that, prior to the filing of the amended third-party complaint, Morrison was acting under the misconception that Ricky Baker, not Tony Baker, was the plaintiff's employer.

The cases cited by the employer are easily distinguishable. In both *Grimming v. Alton & Southern Ry. Co.*, 204 Ill. App. 3d 961 (1990), and *Long v. Friesland*, 178 Ill. App. 3d 42 (1988), the contribution actions were filed either days before, or during, trial, and the third-party defendants were thus clearly prejudiced by the late filing. No comparable facts are present here. Rather, the employer here was served with the amended third-party complaint 13 months prior to trial and was in no manner prevented from preparing for, or participating in, the trial. We therefore hold that the circuit court's post-trial order granting the employer's motion to dismiss Morrison's third-party action was an abuse of discretion. Accordingly, we reverse the circuit court's order dismissing Morrison's third-party complaint against the employer, and reinstate the third-party complaint against the employer and the jury's verdict on that complaint.

### III

Having reinstated the jury verdict on Morrison's third-party complaint against the employer, we must next consider the amount of contribution which Morrison is entitled to recover from the employer.

This court first considered the amount of contribution that a third party sued by an injured employee could obtain from the plaintiff's employer in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). There, we adopted the "Minnesota rule," which holds that an employer may be liable for contribution, but the amount of the employer's contribution is limited to the amount of its workers' compensation liability. Accordingly,

under *Kotecki,* the employer here may be liable in contribution to Morrison for no more than the amount of his workers' compensation liability. The dispute here centers on how that amount is to be calculated with regard to the attorney fees and costs provision of section 5(b) of the Workers' Compensation Act. 820 ILCS 305/5(b) (West 1992).

Section 5(b) of the Workers' Compensation Act requires an employee who has received workers' compensation benefits to reimburse the employer for those benefits from any recovery the employee receives from a third party liable for the employee's injuries. *Wilson v. The Hoffman Group, Inc.,* 131 Ill. 2d 308, 311 (1989). This provision grants the employer a statutory lien on any recovery the employee obtains from a third party, equal to the amount of the workers' compensation benefits paid or owed. *Kotecki,* 146 Ill. 2d at 165; *Corley v. James McHugh Construction Co.,* 266 Ill. App. 3d 618, 621 (1994). Section 5(b) further provides as follows:

> "Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and *where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement *** of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement."* (Emphasis added.) 820 ILCS 305/5(b) (West 1992).

This provision requires an employer to pay, out of any reimbursement received from the employee, its *pro rata* share of the employee's costs and expenses and, unless otherwise agreed, 25% of the gross amount of the reimbursement as fees to the employee's attorney, if the attorney's services substantially contributed to the reimbursement. " 'The plain purpose of this provision *** [is] to require an employer to contribute to the nec-

essary costs of the employee's recovery against a negligent third party where the employer is to receive reimbursement from the recovery for workmen's compensation payments made or to be made to the employee.'" *In re Estate of Callahan*, 144 Ill. 2d 32, 46 (1991), quoting *Reno v. Maryland Casualty Co.*, 27 Ill. 2d 245, 247 (1962).

The employer argues that, pursuant to *Kotecki*, he may not be required to pay both contribution to Morrison in an amount equal to the workers' compensation benefits paid, and section 5(b) attorney fees to the plaintiff or his attorney. The employer notes that, if he is required to pay both, his reimbursement from the plaintiff will be reduced by 25% for attorney fees and he will obtain a reimbursement of only 75% of the workers' compensation benefits paid. However, he will also be required to pay an amount equal to 100% of the benefits in contribution to Morrison. Thus, he asserts, he will ultimately be paying an amount equal to 125% of his workers' compensation liability, in violation of *Kotecki*.[2] The trial court agreed with the employer and held, in effect, that the amount of contribution owed by

---

[2]The employer's argument may be illustrated mathematically as follows: The employer paid $27,457.36 in workers' compensation benefits to the plaintiff prior to trial. After the plaintiff recovered a judgment, the employer was entitled to be reimbursed for the benefits paid. If the section 5(b) attorney fees provision applies, the employer's reimbursement will be reduced by 25% for the plaintiff's attorney fees. The employer's reimbursement from the plaintiff would thus equal only $20,593.02. At this point, therefore, the employer has a net loss of $6,864.34. If the employer is required to pay an amount equal to 100% of the benefits paid as contribution to Morrison, the employer will have to pay Morrison $27,457.36. The employer will therefore have paid a total of $34,321.70 ($27,457.36 + $6,864.34), an amount equal to 125% of the workers' compensation benefits paid by the employer.

the employer should be limited to 75% of the workers' compensation benefits.

We agree with the appellate court that the trial court erred in limiting Morrison's contribution judgment to 75% of the workers' compensation benefits paid. We hold that the employer's liability for contribution should be limited only by the amount of workers' compensation benefits paid, with no reduction for the employer's section 5(b) share of attorney fees and costs. In *Kotecki*, we determined that an employer's contribution liability is limited to the amount of the employer's "workers' compensation liability." *Kotecki*, 146 Ill. 2d at 164-65. The employer's "workers' compensation liability" clearly denotes the amount of benefits the employer owes under the Workers' Compensation Act, not the amount of reimbursement the employer is entitled to recover from the employee. The fact that the employer may also have to pay section 5(b) attorney fees and costs is irrelevant to the determination of the employer's workers' compensation liability, and is therefore irrelevant to the determination of the employer's contribution liability.

This is the only conclusion that is consistent with the language of section 5(b). Reducing the amount of contribution recoverable by the third party to reflect section 5(b) fees would, in effect, shift the obligation to pay attorney fees under section 5(b) from the employer to the third party. The attorney fees and costs provision of section 5(b) is an obligation imposed on the employer, however. There is no basis in section 5(b) for shifting this obligation to the third party. See *Thies v. Korte-Plocher Construction Co.*, 268 Ill. App. 3d 217, 219-22 (1994); *Corley v. James McHugh Construction Co.*, 266 Ill. App. 3d 618, 622-25 (1994). Moreover, the rationale for imposing this obligation on the employer is that the employer receives a benefit as a result of the employee's

having prosecuted the third-party action, namely, reimbursement. The third party, on the other hand, clearly receives no benefit as a result of having been sued by the employee.

The Minnesota Supreme Court has reached this same conclusion with regard to a provision in the Minnesota workers' compensation statute which reduced the employer's reimbursement from the employee's recovery by a portion of the employee's attorney fees in pursuing suit against the third party. *Kordosky v. Conway Fire & Safety, Inc.*, 304 N.W.2d 616 (Minn. 1981). As noted, in *Kotecki* this court adopted the "Minnesota rule" espoused in *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977). *Kotecki*, 146 Ill. 2d at 164. We therefore deem it appropriate to examine how the Minnesota Supreme Court has resolved this issue.

In *Kordosky v. Conway Fire & Safety, Inc.*, 304 N.W.2d 616 (Minn. 1981), the Minnesota Supreme Court considered whether, under *Lambertson*, the employer's liability for contribution was the full amount of workers' compensation benefits, or should be reduced in the same manner as the employer's reimbursement from the employee would be reduced for attorney fees. The *Kordosky* court rejected the argument that the employer's contribution liability should be reduced to only that amount which the employer will obtain in reimbursement from the employee. The court reasoned:

> "In *Lambertson*, this court attempted to balance the interests of the employee, employer and third party. As the court noted, 'the third party's interest is that of any other cotortfeasor—to limit its liability to no more than its established fault.' [Citation.] In order to vindicate this interest, the court allowed the third party to obtain contribution from the employer up to the amount of the employer's workers' compensation liability. [Citation.] If the court adopted [this] solution, the contribution that the third party is able to obtain from the employer, already severely limited in many cases, will be further reduced.

Moreover, since the reduction mandated [by the workers' compensation statute] reflects attorneys fees expended by the employee to obtain the recovery from the third party, to pass this reduction on to the third party would be to require the third party to pay for the privilege of being sued. This is not consistent with the equitable principles that form the basis of the *Lambertson* holding." *Kordosky*, 304 N.W.2d at 621.

We agree with the Minnesota Supreme Court that the third party should not be required to "pay for the privilege of being sued." The trial court therefore erred in reducing the employer's contribution liability to 75% of the workers' compensation benefits paid.

We note that the employer also argues that, if he is required to pay contribution to Morrison in an amount equal to 100% of the workers' compensation benefits, he should not be required to pay section 5(b) attorney fees and costs. The employer would thus deprive the plaintiff and his attorney of section 5(b) fees and costs in this case.

We do not address whether the employer may avoid his section 5(b) obligation to pay fees and costs to the plaintiff in this case. The issue we are called upon to decide is the amount of contribution that Morrison is entitled to recover from the employer. We have held that Morrison is entitled to recover contribution in an amount equal to 100% of the workers' compensation benefits paid, and that whether the employer must pay section 5(b) fees to the plaintiff is irrelevant to this determination. The employer's argument that he should not be required to pay section 5(b) fees in this case would impact the recovery of the plaintiff and his attorney. The plaintiff is not a party to this appeal, and issues regarding the employer's obligations to the plaintiff or his attorney are not before us. We decline to address this issue without the benefit of argument on the plaintiff's behalf. We therefore hold only that Morrison

is entitled to recover contribution from the employer in an amount equal to 100% of the workers' compensation benefits paid, regardless of the employer's obligation to pay fees and costs under section 5(b). To the extent that the appellate court's judgment may have addressed the issue of whether the employer must pay section 5(b) fees to the plaintiff or his attorney, that holding is vacated.

Accordingly, we reverse the circuit court's ruling that the employer's contribution liability to Morrison is limited to 75% of the workers' compensation benefits paid. On remand, the circuit court is directed to enter an order holding the employer liable for contribution to Morrison in the full amount of workers' compensation benefits paid by the employer.

## CONCLUSION

For the reasons stated, we affirm in part and reverse in part the appellate court's judgment. We reverse the appellate court's holding reversing the circuit court's dismissal of Morrison's third-party action against Ricky Baker. We affirm the appellate court's holding reversing the circuit court's dismissal of Morrison's third-party action against Tony Baker. We also affirm the appellate court's holding reversing the circuit court's order limiting Tony Baker's contribution liability to 75% of workers' compensation benefits paid. To the extent that the appellate court's judgment addressed the issue of whether the employer must pay section 5(b) fees to the plaintiff or his attorney, that holding is vacated. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that we should affirm the appellate court's holding reversing the circuit court's dismissal of Morrison's third-party action against Tony Baker. I also agree that we should affirm the appellate court's holding reversing the circuit court's order limiting Tony Baker's contribution liability to 75% of workers' compensation benefits paid. What I cannot agree with is my colleagues' determination that the circuit court was correct in dismissing Morrison's third-party action against Ricky Baker.

In *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991), this court reaffirmed the proposition stated in *Doyle v. Rhodes*, 101 Ill. 2d 1 (1984), that the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)) did not bar third-party actions for contribution under the Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992)). Although *Doyle* and *Kotecki* both dealt with contribution actions against an employer, there is nothing in the reasoning of those cases that would justify a different result when the contribution action is brought against a coemployee. The statutory provisions involved are precisely the same.

In ruling as it does, the majority asserts that third-party actions against coemployees should be prohibited because allowing compensation to be recovered from an otherwise immune coemployee would defeat a basic purpose of the workers' compensation system. My colleagues forget, however, that this is merely one side of the equation. The other side is that granting immunity to a coemployee under the Workers' Compensation Act defeats a basic purpose of the Contribution Act. Indeed, it renders the Contribution Act meaningless.

This court has long recognized the tension between the two laws, but the solution the majority fashions

today is wholly improper. Rather than trying to give effect to both statutes, as it should, the majority simply decides that where the Workers' Compensation and Contribution Acts conflict, the Workers' Compensation Act will prevail. There is no basis in the law for this view. To the contrary, as Justice Freeman noted in his dissenting opinion on denial of rehearing in *Kotecki*, settled rules of statutory construction yield the conclusion that the Workers' Compensation Act must give way to the later-enacted and more specific Contribution Act. *Kotecki*, 146 Ill. 2d at 168, 173 (Freeman, J., dissenting from denial of rehearing).

For the foregoing reasons, I would affirm the judgment of the appellate court in full.